IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC,

    Plaintiff,

              CIVIL ACTION NO.

v.             1:12-cv-0686-JEC

TELEDYNE TECHNOLOGIES, INC.,
CONTINENTAL MOTORS, INC. and
JOHN DOES 1-5,

    Defendants.

## ORDER & OPINION

This case is before the Court on defendants' Motion for Leave to File Second Amended Answer and Counterclaim [54], plaintiff's Motions for Summary Judgment [77] and [79], plaintiff's Motions to Exclude and Strike Expert Testimony [81] and [82], defendants' Motion for Summary Judgment [85], defendants' Motion to Strike [90] and Corrected Motion to Strike [93], defendants' Motion for Leave to File an Appendix [111], and numerous motions by both parties to seal various pleadings and exhibits [78], [80], [83], [86], [106], [110], [115] and [129].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Leave to File Second Amended Answer and Counterclaim [54] should be **GRANTED as unopposed**, plaintiff's Motions

for Summary Judgment [77] and [79] should be **GRANTED**, plaintiff's Motion to Exclude Professor Longan's Testimony [81] should be **GRANTED** and its Motion to Strike Keegan Federal's Testimony [82] should be **DENIED**, defendants' Motion for Summary Judgment [85] should be **DENIED**, defendants' Motion to Strike [90] and Corrected Motion to Strike [93] should be **DENIED**, defendants' Motion for Leave to File an Appendix [111] should be **GRANTED as unopposed**, and the numerous motions to seal [78], [80], [83], [86], [106], [110], [115] and [129] should be **DENIED**.

## BACKGROUND

This case involves a dispute over unpaid attorney's fees. (Compl. [1] at ¶¶ 9-21.)  In February 2009, defendants retained plaintiff to represent them in a wrongful death suit that was pending in the Bibb County Superior Court.  (Pl.'s Statement of Material Facts ("PSMF") [77] at ¶ 1.)  The suit arose out of a plane crash in January 2007, in which Dr. Miles McDonald was killed.  (*Id.* at ¶ 4.) The plaintiffs in the suit alleged that a latent defect in a product supplied by defendants caused the crash.  (*Id.*)

Plaintiff's representation of defendants was memorialized in a February 2009 letter from attorney Tom Strueber to defendant Continental's general counsel Steve Ginger.  (*Id.* at ¶ 2.)  In the letter, Mr. Strueber acknowledged plaintiff's assumption of the

2

defense in the suit. (Pl.'s Exhibits [88] at Ex. A.) Mr. Strueber identified himself as the partner with overall responsibility for the case. (*Id.*) He indicated that his own billing rate for 2009 was $345 an hour, and that associate and paralegal rates were $295 and $125 an hour. (*Id.*)

After executing the representation letter, plaintiff began working on the *McDonald* case. (PSMF [77] at ¶ 15.) Plaintiff's attorneys performed significant work on the case for the next two and a half years, drafting pleadings and discovery, taking and defending depositions, filing motions, attending hearings, and drafting quarterly status reports. (*Id.*) Defendants paid for plaintiff's work on the case through June 29, 2011 based on the hourly rates set forth in the representation letter. (*Id.* at ¶ 16.)

In early September 2011, defendants retained third party attorney Walter DeForest to take the deposition of Robert Hinton, an expert retained by the *McDonald* plaintiffs. (*Id.* at ¶ 12.) Defendants wanted Mr. DeForest to depose Hinton because DeForest was familiar with Hinton's opinions as a result of his work in a prior case. (*Id.* at ¶ 13.) Mr. DeForest billed separately for the time he spent preparing for and taking the Hinton deposition. (PSMF [77] at ¶ 19.)

At some point in September 2011, defendants decided that Mr. DeForest should serve as lead counsel in the *McDonald* trial. (*Id.* at

3

¶ 17.) However, defendants agreed to keep plaintiff as part of the trial team. (*Id.* at ¶ 22.) With the consent and knowledge of defendants, plaintiff performed substantial work on the case during the next month and throughout the trial. (*Id.* at ¶¶ 22-28.) This work included drafting and arguing motions, preparing the pretrial order, examining witnesses at trial, assisting with jury selection and charges, arguing objections, drafting the verdict form, and researching various legal issues that arose during the trial. (*Id.* at ¶ 27.)

At the conclusion of the trial, the *McDonald* plaintiffs asked for $17 million in damages. (PSMF [77] at ¶ 29.) The jury returned a $1.7 million verdict. (*Id.*) Defendants concede that the result was favorable. (*Id.* at ¶¶ 29-30.) Prior to the trial, they had offered to settle the case for $3 million. (*Id.*)

Following the trial, defendants refused to pay the attorney's fees billed by plaintiffs for their work on the *McDonald* case between June 29, 2011 and October 2011. (*Id.* at ¶¶ 30, 34.) The outstanding fees for this time period amount to $642,665.72, exclusive of interest. (PSMF [77] at ¶ 30.) Plaintiff has filed this action to recover those fees on a breach of contract and "open account" theory. (Compl. [1] at ¶¶ 23-35.) Defendants have submitted an answer in which they assert counterclaims for unjust enrichment and

disgorgement.[1]  (Am. Answer [54] at 8-12.)

The parties have filed cross-motions for summary judgment on the claims asserted in the complaint and the unjust enrichment counterclaim asserted in the answer.  (Pl.'s Mots. for Summ. J. [77] and [79] and Defs.' Mot. for Summ. J. [85].)  Both parties have also moved to exclude expert testimony proffered by the opposing side. (Pl.'s Mots. to Exclude [81] and [82] and Defs.' Mot. to Strike [90] and Corrected Mot. to Strike [93].)   In conjunction with the substantive motions, the parties have filed numerous motions to seal various pleadings and exhibits.  (Mots. to Seal [78], [80], [83], [86], [106], [110], [115] and [129].)

<u>**DISCUSSION**</u>

I.   <u>**MOTIONS TO STRIKE AND EXCLUDE**</u>

A.   <u>**Patrick Longan**</u>

Plaintiff moves to exclude the testimony of defense expert Patrick Longan under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).  (Pl.'s Mot. to Exclude [81] at 5.)  In *Daubert,* the Supreme Court concluded that Rule 702 governs the admissibility of scientific expert testimony.  *Daubert,* 509 U.S. at 588.  Rule 702 states that a witness who is "qualified as an expert" may provide

---

[1]  Defendants seek leave to submit a second amended answer and counterclaim [54], which the Court **GRANTS as unopposed**.  The Court will consider the amended answer and counterclaim in ruling on the other pending motions.

5

opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Pursuant to Rule 702, expert testimony is admissible when: (1) the expert is qualified to testify competently, (2) the expert's methodology is reliable, and (3) the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue in the case. *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1252 (11th Cir. 2010). *See also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1309 (11th Cir. 1999)(applying *Daubert*).

The *Daubert* Court emphasized the district court's "gatekeeping" role to ensure that expert testimony is relevant and reliable before it is admitted as evidence. *Daubert,* 509 U.S. at 589. *See also Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1342 (11th Cir. 2003)(noting "the repeated emphasis the Supreme Court has placed upon the district court's 'gatekeeping' role in the determination of whether expert evidence should be admitted"). The overarching goal of *Daubert's* gatekeeping requirement is to ensure that an expert "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"

6

*Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)(citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Patrick Longan is a professor of ethics and professionalism at Mercer University's School of Law.  (Longan Dep. [81] at Ex. A, 7-12.)  In his report, Professor Longan opines that Mr. Strueber violated certain ethical rules when he agreed to represent defendants in the *McDonald* litigation and in his subsequent handling of the case.  (Longan Report [81] at Ex. B.)  Plaintiff argues that Professor Longan is not qualified to render the opinions expressed in his report and that his opinions are not based on a reliable foundation in the record.  (Pl.'s Mot. to Exclude [81] at 6-7.)  As the proponent of Longan's testimony, defendants have the burden of demonstrating that the requirements of Rule 702 are met.  *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010). The Court agrees with plaintiff that defendants have not met that burden with respect to Longan's qualifications or the reliability of his opinions.  Accordingly, plaintiff's motion to exclude [81] is **GRANTED**.

### 1.   Longan's Qualifications

Pursuant to Federal Rule 702, an individual is qualified to testify as an expert if he has sufficient "knowledge, skill, experience, training or education" in the subject matter of his testimony.  FED. R. EVID. 702.  Based on the statements in his expert

7

report, Professor Longan's expertise is primarily in the areas of teaching and ethics. (Longan Report [81] at Ex. B.) Since he became a professor in 1991, Longan has lectured and authored several articles on the topics of ethics and professionalism. (*Id.*) Longan concedes that his practical litigation experience during the last 20 years is limited to a single *pro bono* filing in a probate case. (Longan Dep. [81] at 14-16.) Longan does not have any expertise in conducting litigation or in the general areas of aviation or product liability law. (*Id.* at 18-19.)

Nevertheless, most of Longan's opinions concern the manner in which Mr. Strueber conducted the *McDonald* litigation. (Longan Report [81] at Ex. B.) For example, Professor Longan opines that Mr. Strueber did not adequately investigate a potential suicide defense in the *McDonald* case. (*Id.*) However, Longan acknowledged in his deposition that he had no experience that would enable him to determine whether such a defense would be available in any particular case. (Longan Dep. [81] at 151-152.) Longan also opines that Mr. Strueber improperly valued the *McDonald* case for the purpose of settlement. (Longan Report [81].) But Longan admitted in his deposition that he has never ascribed a settlement value to a case like *McDonald*, and that he does not know what a reasonable settlement value would be for the case. (Longan Dep. [81] at 97-98.)

Although Longan undoubtedly is familiar with the applicable

8

rules of ethics and professionalism, the problem with his testimony is that he lacks sufficient knowledge or experience to credibly opine as to whether Mr. Strueber's specific conduct in this case violated those rules. *See United States v. Paul,* 175 F.3d 906, 912 (11th Cir. 1999)(upholding the exclusion of an evidence professor's testimony concerning the limitations of handwriting analysis).  Without any practical knowledge about how the details of the *McDonald* case should have been handled, such as how the case should have been investigated or valued for settlement, Longan is not qualified to testify that plaintiff mishandled the case.  Consequently, Longan's testimony on that issue must be excluded.

2.   Reliability

Professor Longan's opinions also fail to meet the reliability requirement of *Daubert* and Rule 702.  Even a "'supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method.'" *McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir. 2004)(citing *Clark v. Takata Corp.,* 192 F.3d 750, 759 (7th Cir. 1999)).  To fulfill its gatekeeper obligation under *Daubert,* the Court must ensure that scientific evidence is "the product of reliable principles and methods" and "must screen out 'expert' testimony that is not sufficiently . . . trustworthy for the factfinder to consider." *United States v. Brown,* 415 F.3d 1257, 1266-67 (11th Cir. 2005).

9

The Supreme Court has identified several non-exclusive factors that a court may consider when evaluating the reliability of an expert opinion, including:  (1) whether the opinion can be and has been empirically tested, (2) whether the opinion has been subjected to peer review and publication, (3) the known or potential error rate of the opinion, and (4) whether the opinion is generally accepted in the field.  *Daubert*, 509 U.S. at 593-95.  The pertinence of these factors in any given case "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Brown*, 415 F.3d at 1268 (citing *Kumho Tire*, 526 U.S. at 150).  The Supreme Court has emphasized that the factors should be applied flexibly.  *Kumho Tire*, 526 U.S. at 141.

The above factors are difficult to apply to Professor Longan's opinions because his report primarily consists of conclusory statements.  For example, Longan opines that Mr. Strueber lacked the necessary experience to be lead counsel in the *McDonald* case. (Longan Report [81].)  However, Longan does not state the basis for this opinion and could not explain at his deposition what would constitute adequate experience.  (*Id.* and Longan Dep. [81] at 71-73.) Longan further opines that plaintiff's work on the *McDonald* case was of little value to defendants.  (Longan Report [81].)  But it isn't clear how Longan reached this conclusion, as he failed to review any of plaintiff's work that he purports to evaluate, including the

10

pleadings, depositions, motions, discovery or hearing transcripts from the *McDonald* case. (Longan Dep. [81] at 66-67.)

*Daubert*'s reliability inquiry is focused on the methodology underlying an expert's opinions. *Kilpatrick,* 613 F.3d at 1341. Professor Longan's "methodology" essentially consists of a series of *ipse dixit* statements that are based solely on information provided by his clients and do not conform to the evidence in the record. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.,* 402 F. 3d 1092, 1111 (11th Cir. 2005)(trial courts are not required to admit opinion evidence that is based only on the *ipse dixit* of an expert) and *McDowell,* 392 F.3d at 1300 (conclusory statements indicate unreliable methodology). For these reasons, Longan's testimony must be excluded.

### B. <u>Keegan Federal</u>

Plaintiff does not challenge defense expert Keegan Federal on *Daubert* grounds. (Pl.'s Mot. to Exclude Keegan Federal [82].) Rather, plaintiff contends that Federal is not a proper rebuttal expert because his opinions do not directly respond to the opinions of plaintiff's expert, Wade Copeland. (*Id.* at 4.) Comparing the two expert reports, the Court finds that Federal's proposed testimony is sufficiently responsive to Copeland's opinions to qualify as a rebuttal. *See United States v. Frazier,* 387 F.3d 1244, 1269 (11th

11

Cir. 2004)(the "purpose of rebuttal evidence is 'to explain, repel, counteract, or disprove the evidence of the adverse party'")(quoting *United States v. Gold,* 743 F.2d 800, 818 (11th Cir. 1984)).  Copeland opines that plaintiff's services in the *McDonald* case were highly competent and Federal counters that opinion by pointing out several alleged errors in plaintiff's handling of the case.  As plaintiff does not present any other grounds for excluding Federal's testimony, its motion [82] is **DENIED**.

C.   **Wade Copeland**

Finally, defendants have filed two motions to strike the initial and supplementary reports of Wade Copeland and to exclude his testimony.  (Defs.' Mot. to Strike [90] and Corrected Mot. to Strike [93].)  The corrected motion to strike [90] supersedes the initial motion [93].  The Court thus **DENIES** the initial motion to strike [90] **as moot** and considers the merits of the corrected motion [93].

Wade Copeland is an attorney who has practiced law in Atlanta for more than 35 years.  (Copeland Report [93] at Ex. A, ¶ 5.)  In his initial report, Copeland opines that plaintiff provided competent and valuable services to defendants in the *McDonald* litigation and that the fees incurred in the litigation were necessary and reasonable.  (*Id.* at ¶ 13.)  Copeland specifies in the report that his opinion is based on his review of various documents relevant to

12

the *McDonald* case and on his experience trying hundreds of cases in Georgia.  (*Id*. at ¶¶ 6, 11-13.)

Prior to his deposition, Copeland supplemented his report to indicate his review of materials that had recently become available, including plaintiff's depositions and the expert reports provided by defendants.  (Supplemental Copeland Report [93] at Ex. C.)  Following his deposition, Copeland again supplemented his report to incorporate the opinions expressed during his testimony.  (Second Supplemental Copeland Report [93] at Ex. E.)  Defendants' motion challenges Copeland's initial and both supplemental reports.  (Defs.' Corrected Mot. to Strike [93] at 14-20.)

Defendants apparently concede that Copeland meets the *Daubert* requirements.   However, they suggest that his initial and supplemental reports fail to comply with the requirements of Federal Rule 26(a)(2)(B).  (*Id*.)  Specifically, defendants contend that the initial and first supplemental reports fail to disclose certain opinions that were expressed by Copeland during his deposition.  (*Id*. at 17-18.)  According to defendants, they would be prejudiced by plaintiff's attempt to incorporate those opinions into Copeland's second supplemental report.  (*Id*. at 20-23.)  In addition, defendants argue that the written reports do not adequately describe the bases for Copeland's opinions, which they characterize as inadmissible *ipse dixit* conclusions.  (*Id*. at 18-19.)

13

Rule 26(a)(2)(B) requires that an expert's written report contain:

> a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(I)-(vi). *See also OFS Fitel, LLC v. Epstein, Becker and Green, P.C.,* 549 F.3d 1344, 1361 (11th Cir. 2008)(applying Rule 26(a)(2)(B).) The purpose of this provision is to "'provide opposing parties reasonable opportunity to prepare for effective cross examination [of the expert] and [to] arrange for [rebuttal] expert testimony.'" *Id.* at 1361-62 (quoting *Reese v. Herbert,* 527 F.3d 1253, 1265 (11th Cir. 2008)). To comply with Rule 26(a)(2)(B), an expert report must be timely and sufficiently detailed to accomplish those objectives. *Id.* at 1362.

Copeland's initial report meets all of the above requirements. The report includes the necessary information concerning Copeland's qualifications, compensation and past expert experiences. (Copeland Report [93] at Ex. A, ¶¶ 2-9, 14.) In addition, the report lists 12 specific opinions concerning the competency and value of plaintiff's legal services in the *McDonald* case. (*Id.* at ¶ 13.) It clearly

14

identifies the bases for those opinions and the facts and data that Copeland relied upon to reach them, including his review of 16 documents or categories of documents in the *McDonald* case and the personal knowledge Copeland gained in trying hundreds of cases over the course of his 35-year career. (*Id.* at ¶¶ 5-6, 10-12.)

Copeland's initial report was supplemented when additional materials became available for his review. (Supplemental Copeland Report [93] at Ex. C.) The supplemental report did not change any of Copeland's initial opinions. (*Id.*) It merely indicated that Copeland had reviewed the depositions of plaintiff's attorneys who worked on the *McDonald* case and the depositions and reports of defendants' experts. (*Id.*) The supplementation was not technically required by Rule 26(e), which only applies when a party learns that an expert's report is "in some material respect . . . incomplete or incorrect" and "the additional or corrective information has not otherwise been made known to the other parties during the discovery process." FED. R. CIV. P. 26(e)(1)(A). But it certainly was not improper.

At his deposition, Copeland expanded on the opinions he asserted in his initial report. (Defs.' Corrected Mot. to Strike [93] at 9-13.) Again, Copeland did not materially change or supplement his opinions during the deposition. (*Id.*) He simply provided additional detail. (*Id.*) Defendants cannot credibly claim to have been

15

surprised by any of the opinions Copeland testified to in his deposition. *See Reese,* 527 F.3d at 1265 (noting that the purpose of expert disclosure is to allow the opposing side to prepare its case). Out of an abundance of caution, Copeland submitted a second supplemental report incorporating the opinions expressed in his deposition. (Defs.' Corrected Mot. to Strike [93] at Ex. E.) As discussed above, the second supplementation was not technically necessary, but was nevertheless entirely proper.

Having reviewed Copeland's initial and supplemental reports, the Court finds that those reports meet the requirements of Federal Rule 26(a)(2)(B). Defendants do not present any other justification for striking the reports or excluding Copeland's testimony. Accordingly, the Court **DENIES** defendants' corrected motion to strike [93].

## II.   SUMMARY JUDGMENT MOTIONS

### A.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict on the issue for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the

16

trial court may, in its discretion, implement in lieu of a trial on the merits.  However, Federal Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which he will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id*. at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion.  *Id*. at 323.  The movant is not required to negate his opponent's claim in order to meet this responsibility.  Rather, the movant may discharge his burden by merely "'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the non[-]moving party's case."  *Id*. at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.

In deciding a motion for summary judgment, the court must view all evidence and draw any factual inferences in the light most favorable to the non-moving party.  *Samples v. City of Atlanta*, 846

17

F.2d 1328, 1330 (11th Cir. 1988).  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (1986).  The requirement to avoid summary judgment is that there be no "*genuine* issue of *material* fact."  *Id.*

### B.   **Breach of Contract**

The parties agree that the claims asserted in this diversity action are governed by Georgia law.[2]  Under Georgia law, a valid contract requires "'parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.'" *Graham v. HHC St. Simons, Inc.*, No. A13A0454, 2013 WL 3358030, at *2 (Ga. App. July 5, 2013)(quoting O.C.G.A. § 13-3-1).  A contract is complete and enforceable if there is a "'meeting of the minds as to all essential terms.'"  *Georgia Dep't of Cmty. Health v. Data Inquiry, LLC,* 313 Ga. App. 683, 685-86 (2012)(quoting *Harris v. Baker*, 287 Ga. App. 814, 816 (2007)).

The undisputed evidence supports plaintiff's claim to have

---

[2]  *See Grupo Televisa, S.A. v. Telemundo Commc'n Grp., Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007)(a federal court sitting in diversity applies the conflicts rules of its forum state to determine which state law applies) and *Farm Credit of N.W. Florida, ACA v. Easom Peanut Co.,* 312 Ga. App. 374, 381 (2011)(Georgia applies the "lex loci contractus rule, which provides that when a contract is made and to be performed in one state, its validity, nature, construction, and interpretation are governed by the substantive law of that state").

entered into a valid and enforceable contract with defendants. Defendants acknowledge that they retained plaintiff to represent them in the *McDonald* suit. (DSMF [77] at ¶ 1.) In the February 2009 representation letter, plaintiff agreed to provide legal services in exchange for payment at the specified hourly rates. (Pl.'s Exhibits [88] at Ex. A.) Plaintiff subsequently assumed the *McDonald* defense, and defendants paid plaintiff for its services at the rates set forth in the 2009 letter. (DSMF [77] at ¶ 16.) Defendants do not dispute that the legal services agreement concerned a proper subject matter, was supported by consideration, and was executed by parties able to contract. *Graham,* 2013 WL 3358030, at *2. Mutual assent is likewise apparent from the terms of the 2009 letter and defendants' payment of fees as required by the letter for over two years. *Id.* (applying an "objective theory of intent whereby [a] party's intention is deemed to be that meaning a reasonable [person] . . . would ascribe to [the party's] manifestations of assent").

Nevertheless, defendants argue that the contract for legal services is unenforceable because defendants never signed the 2009 letter and there are no other signed contemporaneous writings that contain all of the terms of the contract. (Defs.' Resp. [112] at 8.) In support of this argument, defendants cite *Board of Regents v. Tyson,* 261 Ga. 368 (1991). (Defs.' Br. in Supp. of Summ. J. [85] at 4.) The central question in *Tyson* was whether plaintiff could invoke

19

a constitutional waiver of sovereign immunity applicable to "any action ex contractu for the breach of any written contract . . . entered into by the state or its departments and agencies." *Id.* at 369. The Georgia Supreme Court held that in order to invoke the waiver, plaintiff needed to produce "signed contemporaneous writings" evidencing the contract. *Id.*

*Tyson* is not applicable to this case, which does not involve sovereign immunity. Neither is there any other Georgia authority to support plaintiff's argument that, outside of the sovereign immunity context, a valid contract must be evidenced by "signed contemporaneous writings." In fact, Georgia law has long recognized that "[a]ssent to the terms of a contract may be given other than by signatures." *Cochran v. Eason*, 227 Ga. 316, 318 (1971). *See also Turner Broadcasting Sys., Inc. v. McDavid,* 303 Ga. App. 593, 596 (2010)(noting that "oral contracts falling outside the purview of the Statute of Frauds may be binding and enforceable").[3]

---

[3] Defendants do not argue that the contract for legal services is governed by the Statute of Frauds. The only potentially applicable provision of the Statute of Frauds is the requirement that agreements "not to be performed within one year" of their making be in writing and signed. O.C.G.A. § 13-5-30(5). But to fall within the ambit of that provision, an agreement must be "incapable of being performed within a year." *Bithoney v. Fulton-DeKalb Hosp. Auth.,* 313 Ga. App. 335, 341 (2011). The time frame for the provision of legal services was not specified in the agreement, and therefore the Statute of Frauds does not appear to be implicated. *Id.* Defendants apparently agree, as they do not rely on this statute.

20

Alternatively, defendants contend that their contract with plaintiff should not be enforced for various reasons. (Defs.' Resp. [112] at 8-24.) Specifically, defendants suggest that Mr. Strueber was not qualified to act as lead counsel in the *McDonald* case because he lacked recent trial experience or any trial experience in Georgia. (*Id.* at 9-12.) They also question Strueber's motivation and his intention to try the *McDonald* case based on his legal advice concerning the technical nature and proper settlement range for the case. (*Id.* at 13-14.) Finally, defendants point to two supposed errors in plaintiff's handling of the *McDonald* case, including (1) inadequate development of a suicide defense and (2) incorrect analysis of the Georgia Offer of Settlement Statute. (*Id.* at 14-23.) According to defendants, these inadequacies and flaws amounted to a breach of contract that diminished the value of plaintiff's services and should result in a reduction of fees. (*Id.* at 23.)

Defendants correctly note that, in Georgia, any contract for professional services includes the implied requirement that the professional abide by the applicable standard of care. *See Newell Recycling of Atlanta, Inc. v. Jordan Jones and Goulding, Inc.,* 288 Ga. 236, 237 (2010)(noting that "an implied promise to perform professionally" is written into a professional services contract by law). For an attorney, that requirement is defined as the duty to exercise "a reasonable degree of skill and care, as determined by the

21

degree of skill and care ordinarily employed by [attorneys] under similar conditions and like surrounding circumstances." *Anderson v. Jones,* Nos. A13A0507, A13A0508, A13A0509, 2013 WL 3286703, at *3 (Ga. App. July 1, 2013). Malpractice on the part of plaintiff would thus constitute a breach of the contract that would otherwise require the payment of fees. *See Newell,* 288 Ga. at 237 (pointing out that malpractice is a breach of the duty of care that is implied in a contract for professional services).

Defendants stop short of alleging malpractice, however, and there is no evidence in the record that could conceivably support such an allegation. With respect to Mr. Strueber's qualifications, it is undisputed that Strueber has been a member of the Georgia Bar since 1986 and that he is the leader of plaintiff's aviation litigation section. (Defs.' Resp. [112] at 12.) In preparing the *McDonald* case, Strueber had the assistance of at least one associate with substantial and recent trial experience in Georgia. (Buhay Dep. [121] at 9-11.) The idea that Strueber somehow violated the standards of the profession by accepting the *McDonald* assignment under those circumstances is, to be frank, absurd.

Further, Mr. Ginger had worked with Strueber on four cases prior to retaining him for the *McDonald* defense. (PSMF [77] at ¶ 3.) Ginger was thus familiar with and capable of evaluating the quality of Strueber's work. There is no indication that Strueber

22

misrepresented his experience.  If recent or Georgia trial experience was that important to defendants, they should have probed those issues before hiring him.  Having agreed to pay plaintiff specified hourly rates and accepted its legal services, defendants cannot retroactively alter the terms of the agreement based on a post hoc evaluation of Strueber's credentials.

Defendants' argument concerning Mr. Strueber's motivation and intention to try the *McDonald* case is likewise unavailing.  The only evidence cited in support of this argument is that Strueber advised defendants that (1) the *McDonald* case was technical and would be hard for a jury to understand and (2) $9 million was the upper range of the reasonable settlement value of the case.  (Defs.' Resp. [112] at 18-19.)  These statements are classic examples of the type of judgment calls that attorneys are routinely required to make when they represent clients in litigation.  They do not support a reasonable inference that Strueber was unwilling or unmotivated to try the case.

Every attorney who worked on the *McDonald* case testified unequivocally that it was always plaintiff's intention to try the case.  (PSMF [77] at ¶¶ 5, 42.)  Their testimony is unrebutted.  And in fact, plaintiff ultimately participated in every phase of the trial from drafting the pretrial order to submitting the verdict form.  (*Id*. at ¶¶ 27, 44.)  Given this evidence, defendants cannot

23

credibly argue that plaintiff's attorneys lacked the sufficient intention or motivation to try the case, such that plaintiff violated the applicable standard of care. *See Leibel v. Johnson,* 291 Ga. 180, 181 (2012)(describing malpractice as a "significant deviation" from the norm).

Finally, neither of plaintiff's alleged errors in handling the *McDonald* case justify nonpayment. *Id.* With respect to the suicide defense, defendants suggest that plaintiff did not properly investigate or disclose information concerning the possibility that Dr. McDonald's crash was the result of his suicide, rather than a product defect. (Defs.' Resp. [112] at 14-17, 20-22.) It is undisputed that plaintiff determined that the suicide defense was not viable after hiring a private investigator to look into Dr. McDonald's background and interviewing several of Dr. McDonald's friends, colleagues and family members. (PSMF [77] at ¶¶ 57, 61.) Plaintiff discussed the results of its investigation and interviews during a claims review meeting with Mr. Ginger in April 2011. (*Id.* at ¶ 62.) Thereafter, Mr. Ginger never asked plaintiff about the development of a suicide defense. (*Id.* at ¶ 63.)

Defendants point to two pieces of allegedly undisclosed evidence that might have supported the suicide defense, including (1) accident investigator Greg Feith's opinion that the McDonald crash was intentional, and (2) one witness's statement that Dr. McDonald had at

24

some prior time been involved in a business lawsuit that had "ruined his life." (Defs.' Resp. [112] at 14-17.)  However, defendants concede that Mr. DeForest was aware of the Feith opinion at least a month before trial.  (*Id.*)  It was DeForest who ultimately made the tactical decision to forego the defense because he did not want to risk inflaming the jury.  (PSMF [77] at ¶¶ 68-69.)  There is no evidence that the stray witness statement cited by defendants would have had any impact on that decision, given the overwhelming testimony from family members, friends and business associates that Dr. McDonald was a "wonderful man who would not commit suicide." (Defs.' Resp. [112] at 21.)  *See Quarterman v. Cullum,* 311 Ga. App. 800, 805-06 (2011)(to prevail on a malpractice claim, the plaintiff must show that the outcome would have been different but for the attorney's alleged error).

As to the settlement issue, Georgia's Offer of Settlement Statute provides that:

> If a defendant makes an offer of settlement which is rejected by the plaintiff, the defendant shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the defendant or on the defendant's behalf from the date of the rejection of the offer of settlement through the entry of judgment if the final judgment is one of no liability or the final judgment obtained by the plaintiff is less than 75 percent of such offer of settlement.

O.C.G.A. § 9-11-68(b)(1).  To invoke the statute, a defendant must make a settlement offer at least 30 days prior to trial.  *Id.* at (a).

25

Defendants offered to settle the *McDonald* case for $3 million on September 8, 2011. (PSMF [77] at ¶ 78.) The $1.7 million jury verdict would have thus implicated the statute, had the offer been made a few days earlier. *Id.* at (a) and (b)(1). Defendants argue that they were not able to take advantage of the statute because of plaintiff's failure to provide timely and accurate advice as to settlement. (Defs.' Resp. [112] at 22-23.)

It is undisputed that Mr. Strueber sent defendants a copy of O.C.G.A. § 9-11-68 on April 13, 2011, nearly six months prior to trial. (PSMF [77] at ¶ 72.) The plain language of the statute requires that an offer of settlement be made 30 days prior to trial. O.C.G.A. § 9-11-68(a). Nevertheless, defendants were admittedly unreceptive to any attempt by plaintiff to settle the case within that time frame. (*Id.* at ¶¶ 75-78.) Defendants made it known from the beginning of the litigation that they did not want to settle the *McDonald* case. (Defs.' Resp. [112] at 5.) As of September 3, 2011, the deadline for a settlement offer to invoke § 9-11-68, plaintiff's settlement authority was only $600,000. (PSMF [77] at ¶ 77.)

In short, and based on the undisputed evidence in the record, defendants have not presented any justifiable reason for failing to pay the legal fees associated with plaintiff's work on the *McDonald* case between June 29, 2011 and mid-October, 2011. The parties had a valid and enforceable contract for the provision of legal services at

26

the rates set forth in the February 2009 representation letter. Defendants admit that the hours expended by plaintiff were necessary and that the hourly rates charged by plaintiff's attorneys were reasonable. (*Id*. at ¶ 34 and Pl.'s Br. in Supp. of Summ. J. [77] at 14.)   If defendants were unsatisfied with plaintiff's work, they could have terminated the legal services agreement or instructed plaintiff to discontinue its work on the *McDonald* case.   Having instead acquiesced in and ordered plaintiff's continued work on the case, defendants are obligated to pay the contractually-agreed upon fees for that work.   Accordingly, plaintiff's motion for summary judgment on the breach of contract claim [77] is **GRANTED** and defendants' cross-motion for summary judgment [85] is **DENIED**.[4]

> **C.   Unjust Enrichment**

In their original and both amended answers, defendants assert a counterclaim for unjust enrichment.   (Answer [9] at 8-11 and Am. Answer [12] at 7-8.)   It is difficult to see how plaintiff might have been unjustly enriched by providing unrecompensed legal services to defendants for several months and throughout a major trial.   In any event, unjust enrichment is an equitable claim that only applies in the absence of an enforceable contract.   *St. Paul Mercury Ins. Co. v.*

---

[4]   In conjunction with their summary judgment motion, defendants filed a motion for leave to submit an appendix [111].   The Court **GRANTS** the motion [111] **as unopposed**, and has considered the appendix in ruling on the summary judgment motions.

*Meeks*, 270 Ga. 136, 137 (1998).  *See also Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006)(Thrash, J.)(dismissing an equitable claim of promissory estoppel where the existence of a contract was undisputed).  The Court has ruled that the parties entered into a valid and enforceable professional services contract.  Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment on the unjust enrichment counterclaim [79].

### D.  <u>Disgorgement</u>

In their second amended answer, defendants also assert a counterclaim for disgorgement.  (Second Am. Answer [54] at 12.) Defendants do not cite any authority to support their disgorgement theory, but they acknowledge that disgorgement is an equitable doctrine.  (*Id.*)  As such, it is subject to the rule limiting its application to cases where there is no enforceable contract.  *See St. Paul Mercury Ins. Co.,* 270 Ga. at 137 and *Liniado v. Alexander,* 199 Ga. App. 256, 258 (1991)("equity will be denied if there is a remedy at law for damages").  Moreover, it is apparent from the answer that the disgorgement counterclaim is based entirely on the malpractice theory that the Court has rejected.  (*Id.* at ¶ 9.)  For these reasons, the disgorgement counterclaim is **DISMISSED**.

28

### E.   <u>Attorney's Fees and Interest</u>

In the complaint, plaintiff requests interest on the unpaid fees in the case at the legal rate of 7% per year on its breach of contract claim and interest under O.C.G.A. § 7-4-16 at the rate of 18% per year on its "open account" claim.  (Compl. [1] at 11.)  In the motion for summary judgment, plaintiff repeats its request for interest at the rate of 18%.  (Pl.'s Br. in Supp. of Summ. J. [77] at 21.)  Plaintiff also seeks to recover the attorney's fees that it has incurred in bringing this lawsuit pursuant to O.C.G.A. § 13-6-11. (Compl. [1] at 12 and Pl.'s Br. in Supp. of Summ. J. [77] at 21.)

Plaintiff has not briefed the open account claim sufficiently for the Court to grant summary judgment on it, and neither party has provided adequate information for the Court to determine whether to award interest and/or attorney's fees, or at what rate.  Based on its ruling on the breach of contract claim, judgment is due to be entered in favor of plaintiff in the amount of $642,665.72, which represents the unpaid fees in the *McDonald* case.[5]  If plaintiff intends to seek interest on those fees or to recover the fees incurred in pursing this action, it should submit a fee petition and a brief specifically addressing the interest and fee issues by **Friday, October 11, 2013.**

---

[5]  Plaintiff should advise if it seeks entry of judgment prior to a decision on interest and attorney's fees.  Defendants may, of course, respond.

AO 72A
(Rev.8/82)

Defendants may respond with their own brief by **Monday, November 4, 2013**.  Any reply by plaintiff should be filed by **Monday, November 18, 2013.**

### III. <u>MOTIONS TO SEAL</u>

Finally, the parties have filed numerous motions to seal various exhibits and pleadings.  (Mots. to Seal [78], [80], [83], [86], [106], [110], [115], [129].)  The motions all essentially take the same format:  (1) they refer to a June 27, 2012 Consent Order allowing the parties to designate information as confidential or proprietary, and (2) they represent that a particular filing "implicates" the order or is otherwise "confidential."  (*Id.*)  The motions do not describe the allegedly confidential information.  (*Id.*)  Nor do they provide any further justification for concealing the information from the public.  (*Id.*)

Although the Court has the authority to seal documents under Federal Rule 26(c), there is a presumption in favor of public access.  *Romero v. Drummond Co., Inc.,* 480 F.3d 1234, 1245 (11th Cir. 2007)("'[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process'")(quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1311 (11th Cir. 2001)).  In order to overcome that presumption, the movant must show

30

"good cause." *Id.* at 1246. The Court must then balance the public right of access against the movant's interest in keeping the information confidential. *Id.*

In this case, there is no way for the Court to balance the relevant interests because the parties have not even attempted to make the required good cause showing. Rather, they have simply alleged that information is "confidential," and then cited the Court's consent order. Such consent orders help to facilitate discovery by encouraging full disclosure. However, they do not supply the good cause needed to seal court records under Rule 26(c). *See In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002)(O'Kelley, J.)("calling a document confidential does not make it so in the eyes of the court; these consensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved").

As the parties have not met the requirements for sealing court records under Rule 26(c), their motions to seal [78], [80], [83], [86], [106], [110], [115], [129] are **DENIED**. In addition to the most recent filings, the parties have previously filed other materials under seal pursuant to the Consent Order. (*See* Pl.'s Resp. to Mot. for Protective Order [42] and Defs.' Reply in Supp. of Protective Order [47].) As neither party has met the requirements of Rule 26(c)

31

with respect to any of these documents, **the Court will unseal all of the filings in this case, on October 28, 2013, absent a contrary holding by the Court based on a specific and compelling showing by the interested party or parties.**

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS as unopposed** defendants' Motion for Leave to File Second Amended Answer and Counterclaim [54], **GRANTS** plaintiff's Motions for Summary Judgment [77] and [79], **GRANTS** plaintiff's Motion to Exclude Professor Longan's Testimony [81], **DENIES** plaintiff's Motion to Strike Keegan Federal's Testimony [82], **DENIES** defendants' Motion for Summary Judgment [85], **DENIES as moot** defendants' Motion to Strike [90] and **DENIES** defendants' Corrected Motion to Strike [93], **GRANTS as unopposed** defendants' Motion for Leave to File an Appendix [111], and **DENIES** the numerous motions to seal [78], [80], [83], [86], [106], [110], [115] and [129].

**SO ORDERED**, this <u>9th</u> day of SEPTEMBER, 2013.


/s/ Julie E. Carnes
_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE