```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
                  ATLANTA DIVISION
```

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC,

    Plaintiff,

                                                  CIVIL ACTION NO.

v.                                               1:12-cv-0686-JEC

TELEDYNE TECHNOLOGIES, INC.,
CONTINENTAL MOTORS, INC. and
JOHN DOES 1-5,

    Defendants.

### ORDER & OPINION

This case is before the Court on plaintiff's Motion to Amend the Court's Briefing Schedule [136], plaintiff's Motion for Attorney's Fees [137], plaintiff's Supplemental Brief in Support of Summary Judgment on its Open Account Claim [135], and defendants' Motion for Leave to File a Motion to Set Aside the Court's Summary Judgment Order [146]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion to Amend [136] should be **GRANTED as unopposed**, plaintiff's Motion for Attorney's Fees [137] should be **DENIED**, plaintiff's request for summary judgment on its open account claim [135] should be **GRANTED**, and defendants' Motion for Leave [146] should be **DENIED**.

**BACKGROUND**

The Court described the facts underlying this case in detail in its previous summary judgment order. (Order [133].) Briefly, the case involves a dispute over unpaid attorney's fees incurred in connection with plaintiff's representation of defendants in a wrongful death suit in Bibb County Superior Court. (*Id.* at 2.) The suit arose out of a plane crash in January 2007, in which Dr. Miles McDonald was killed. (*Id.*) The plaintiffs in the *McDonald* suit alleged that a latent defect in a product supplied by defendants caused the crash. (*Id.*)

Plaintiff's representation of defendants was memorialized in a February 2009 letter from attorney Tom Strueber to defendant Continental's general counsel Steve Ginger. (*Id.*) In the letter, Mr. Strueber acknowledged plaintiff's assumption of the defense in the suit and set forth hourly billing rates for the professionals who would be working on the case. (Order [133] at 3.) Plaintiff subsequently performed substantial work on the *McDonald* case over the next two and a half years. (*Id.*) Defendants paid for plaintiff's work on the case through June 29, 2011 based on the hourly rates set forth in the representation letter. (*Id.*)

In early September 2011, defendants retained third-party attorney Walter DeForest to depose one of the experts hired by the *McDonald* plaintiffs. (*Id.*) Thereafter, defendants decided that Mr.

2

DeForest should serve as lead counsel in the *McDonald* trial. (*Id.*) However, defendants agreed to keep plaintiff as part of the trial team. (Order [133] at 4.) With the consent and knowledge of defendants, plaintiff continued to work on the case during the next month and throughout the trial. (*Id.*) Plaintiff's work during this time included drafting and arguing motions, preparing the pretrial order, examining witnesses at trial, assisting with jury selection and charges, arguing objections, drafting the verdict form, and researching various legal issues that arose during the trial. (*Id.*)

Defendants acknowledge that plaintiff performed numerous hours of work on the *McDonald* case between June 29, 2011 and October 2011. (*Id.*) Defendants further concede that they obtained a favorable result at trial. (*Id.*) Nevertheless, defendants refused to pay the attorney's fees billed by plaintiffs for any work performed after June 29, 2011. (Order [133] at 4.) The outstanding fees for this time period amount to $642,665.72, exclusive of interest. (*Id.*) Plaintiff filed this action to recover those fees on a breach of contract and "open account" theory. (*Id.*)

In its previous order, the Court granted summary judgment to plaintiff on its breach of contract claim. (*Id.* at 27.) However, the Court asked for additional briefing on the open account claim. (*Id.* at 29.) Plaintiff has provided the requested supplemental briefing and now asks for summary judgment on the open account claim.

3

(Pl.'s Supplemental Br. in Supp. of Summ. J. [135].) Plaintiff has also filed a motion to recover the attorney's fees and expenses it has incurred in connection with this action. (Pl.'s Mot. for Attorney's Fees [137].) In addition to these motions, defendants have recently filed a motion seeking permission to submit an untimely motion to reconsider and set aside the Court's previous summary judgment order. (Defs.' Mot. for Leave [146].)

## DISCUSSION

### I.  PLAINTIFF'S OPEN ACCOUNT CLAIM AND PREJUDGMENT INTEREST

As mentioned, the Court has already determined that plaintiff is entitled to recover $642,665.72 in unpaid attorney's fees. (Order [133] at 29.) The only uncertainty that remains concerns the rate of prejudgment interest that should be applied to the unpaid fees. Georgia law provides for prejudgment interest at the legal rate of 7% per year on a breach of contract claim for liquidated damages. O.C.G.A. §§ 7-4-2 and 7-4-15.[1] However, an open account claim that meets certain conditions accrues prejudgment interest at the higher rate of 18% per year. O.C.G.A. § 7-4-16. In its supplemental brief,

---

[1] This is a diversity case, governed by Georgia law. (Order [133] at 18.) The prejudgment interest issue is thus also controlled by Georgia law. *SEB S.A. v. Sunbeam Corp.,* 476 F.3d 1317, 1320 (11th Cir. 2007). Under Georgia law, all liquidated demands bear interest from the time a party is "liable and bound to pay them." *Hendricks v. Blake & Pendleton, Inc.,* 221 Ga. App. 651, 652 (1996). *See also Discrete Wireless, Inc. v. Coleman Tech., Inc.,* 422 Fed. App'x 777, 780-81 (11th Cir. 2011)(citing O.C.G.A. § 7-4-15).

4

plaintiff contends that the undisputed facts in the record justify summary judgment on its open account claim and the accrual of prejudgment interest at the 18% rate. (Pl.'s Supplemental Br. [135] at 2-14.)

An open account claim is a simplified procedure to recover money owed for goods or services that have been provided on credit. *Am. Arbitration Ass'n v. Bowen*, 322 Ga. App. 51, 52-53 (2013). The claim is available "'where the price of such goods or services has been agreed upon and where it appears that the [provider] has fully performed its part of the agreement and nothing remains to be done except for the other party to make payment.'" *Id.* (quoting *Five Star Steel Constr., Inc. v. Klockner Namasco Corp.*, 240 Ga. App. 736, 738–739 (1999)). A plaintiff can establish a *prima facie* case to recover amounts due on an open account by submitting an authenticated invoice along with testimony that the invoice remains unpaid. *Id.* at 53. The defendant must then offer specific factual evidence refuting the plaintiff's proof to avoid judgment on the claim. *Id.*

The undisputed facts in the record support plaintiff's claim to recover amounts due on an open account. In conjunction with its motion for summary judgment, plaintiff submitted evidence that defendants failed to pay invoiced legal bills in the amount of $642,665.72. (Pl.'s Statement of Material Facts [77] at ¶ 30 and Pl.'s Exhibits [88] at Exs. G and H.) Defendants concede that

5

plaintiff performed the work that was invoiced, and that the hours expended by plaintiff were necessary and the rates charged by plaintiff's attorneys reasonable. (Order [133] at 27.) The Court in its previous order rejected the various reasons asserted by defendants for non-payment, all of which inappropriately relied on subjective and after-the-fact assessments of Mr. Strueber's competency and skill in handling the *McDonald* case. (*Id.* at 21-27.) Accordingly, summary judgment is warranted on plaintiff's open account claim. *See Patton v. Turnage,* 260 Ga. App. 744, 749 (2003) (authorizing the recovery of unpaid attorney's fees on an open account theory where the client's grievance against his former attorney did not concern the amount of fees due but rather the attorney's handling of the case).

To obtain the 18% prejudgment interest rate that applies to certain open account claims, plaintiff must, in addition to the above show that: (1) the invoices constitute a commercial account, (2) the amounts reflected on the invoices are liquidated, and (3) plaintiff made a pre-trial demand for the 18% interest rate available under O.C.G.A. § 7-4-16. *See* O.C.G.A. § 7-4-16 and *Hampshire Homes, Inc. v. Espinosa Const. Serv., Inc.,* 288 Ga. App. 718, 722-23 (2007). As discussed below, plaintiff easily satisfies all of these requirements.

With regard to the first requirement, § 7-4-16 defines a

6

"commercial account" as "an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services." O.C.G.A. § 7-4-16. The legal fees at issue here satisfy the plain language of this definition. *See Patton,* 260 Ga. App. at 749 (a client's obligation to pay for legal services constitutes a commercial account) and *Lipton v. Warner, Mayoue & Bates, P.C.,* 228 Ga. App. 516, 517 (1997)(treating unpaid attorney's fees as a commercial account).

As to the second requirement, a debt is liquidated when the amount of the debt is "agreed on by the parties, or fixed . . . by the operation of law." *Hampshire Homes,* 288 Ga. App. at 722. In the February 2009 representation letter, plaintiff agreed to provide legal services in exchange for payment at specified hourly rates. (Order [133] at 19.) Defendants do not dispute that plaintiff performed the services that are set out in the invoices and that the services were billed at the rates listed in the representation letter. (*Id.* at 27.) The invoiced amounts are thus liquidated. *Id.* and *Patton,* 260 Ga. App. at 749 (unpaid attorney's fees invoiced at agreed upon rates constitute a liquidated debt).

Finally, plaintiff has submitted evidence of the necessary pre-trial invocation of O.C.G.A. § 7-4-16 and the interest available under that statute. (Pl.'s Supplemental Br. [135] at 12-14.) In February 2012, prior to filing the complaint in this action,

7

plaintiff sent defendants a demand letter citing § 7-4-16 and indicating plaintiff's right and intention to seek interest at the 18% per annum rate on all of the outstanding fees. (*Id.* at Ex. B.) In the demand letter, plaintiff offered to waive the interest if payment was made by February 29, 2012. (*Id.*) The demand letter satisfies the pre-trial invocation requirement described in *Hampshire Homes*, 288 Ga. App. at 722-23. *Compare Spears v. Allied Eng'g Assoc., Inc.,* 186 Ga. App. 878, 879 (1988)(finding plaintiff's invocation insufficient because it did not specify the "exact rate at which interest was to accrue").

As plaintiff has prevailed on its open account claim and all of the additional requirements are met, the Court finds that prejudgment interest should accrue on the unpaid legal fees at the 18% per annum rate provided by O.C.G.A. § 7-4-16. Under § 7-4-16, prejudgment interest begins to accrue "on the amount owed from the date upon which it became due and payable." O.C.G.A. § 7-4-16. Using this accrual date, plaintiff has calculated prejudgment interest on the unpaid fees in the amount of $218,030.52 as of September 30, 2013 and increasing by $316.93 per day. Defendants do not contest these calculations.[2] Accordingly, the final judgment in this case will

---

[2] Indeed, and remarkably given the amount of money involved, defendants do not specifically contest or provide evidence to refute any aspect of plaintiff's open account claim. In response to plaintiff's supplemental brief, defendants refer the Court to their response to plaintiff's initial motion for summary judgment [114].

include an award of prejudgment interest pursuant to the calculations provided by plaintiff.

## II. ATTORNEY'S FEES

In addition to its claims to recover unpaid legal fees and prejudgment interest, plaintiff asserts in the complaint a claim under O.C.G.A. § 13-6-11. (Compl. [1] at 12.) That statute permits a plaintiff to recover attorney's fees and expenses "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Plaintiff apparently has chosen not to pursue its claim under § 13-6-11. Nevertheless, plaintiff has filed a motion asking the Court to use its inherent power and discretion to award fees and expenses based on the alleged bad faith and vexatious refusal of defendants to pay their legal fees. (Pl.'s Mot. for Fees and Expenses [137].)

Under the American Rule, litigants in the United States typically bear responsibility for their own attorney's fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). *See also Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331 (11th Cir. 2002)(citing

---

However, that document does not mention the open account claim. Neither do defendants' other filings present evidence on the open account claim or address the claim in any detail. (*See* Defs.' Br. in Supp. of Summ. J. [85] at 5 and Defs.' Resp. Br. [112] at 24.)

9

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257 (1975)).  Federal courts are authorized to assess attorney's fees in certain "narrowly defined" circumstances, including cases where "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (internal quotation marks omitted).  However, as the Supreme Court instructed in *Chambers*, inherent powers must be invoked with caution and "exercised with restraint and discretion."  *Id.* at 44, 50.

Pursuant to the Supreme Court's directive in *Chambers*, federal courts typically only engage in fee-shifting in exceptional cases that involve clearly frivolous claims or particularly egregious conduct during the litigation. *See Pedraza,* 313 F.3d at 1336 ("[a]n action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons").  Although defendants did not ultimately prevail on their defenses and counterclaims, their legal positions were not "clearly frivolous."  Nor have defendants conducted the litigation in an egregious or vexatious manner. *Compare Chambers,* 501 U.S. at 32, 57 (upholding the decision to assess fees against a party who had: (1) attempted to deprive the court of jurisdiction by acts of fraud, (2) filed false and frivolous pleadings, and (3) attempted by other tactics of delay, oppression, harassment, and massive expense to reduce his opponent to "exhausted

10

compliance"). Accordingly, the Court **DENIES** plaintiff's motion for attorney's fees and expenses [137].

### III. DEFENDANTS' MOTION FOR LEAVE

In their motion for leave, defendants seek permission to file a motion for reconsideration of the Court's previous summary judgment order. (Defs.' Mot. for Leave [146] at 1.) Defendants acknowledge that leave is required because the request for reconsideration is untimely. (*Id.*) Local Rule 7.2 requires that such motions be filed "within twenty-eight (28) days after entry of the order" at issue. LR 7.2(E), NDGa. The Court entered its summary judgment order on September 9, 2013. (Order [133].) Defendants filed their motion for leave and attached motion for reconsideration nearly nine months later, on June 3, 2014. (Defs.' Mot. for Leave [146].) However, defendants argue that the delay is justified because the basis for reconsideration was not apparent until the Supreme Court issued its decision in *Tolan v. Cotton*, 134 S. Ct. 1861 (2014).

The Court is not persuaded. Contrary to defendants' argument, *Tolan* does not announce a change in the law that would justify a nine-month delay in seeking reconsideration of the Court's ruling. The *Tolan* decision simply emphasizes that in the qualified immunity context, as is true generally, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Id.* at 1866. This Court recognized and applied that long-standing

11

principle in its summary judgment order.  (Order [133] at 17-18.)

The Court also notes that the underlying motion for reconsideration is meritless.  Local Rule 7.2(E) only authorizes such motions when "absolutely necessary" to address (1) an intervening change in the law, (2) newly discovered evidence or (3) a need to correct clear error or prevent manifest injustice.  LR 7.2(E), NDGa and *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (11th Cir. 2010).  Citing *Tolan*, defendants rely on the "intervening change" prong as a basis for reconsideration.  (Defs.' Mot. for Leave [146] at Ex. 1.)  Again, *Tolan* does not constitute a change in the law, but rather an application of the same well-established summary judgment standard that the Court relied upon in its previous ruling.  As defendants do not present any other potential grounds for reconsideration, the Court **DENIES** their motion for leave [146].

## CONCLUSION

For the foregoing reasons, the Court **GRANTS as unopposed** plaintiff's Motion to Amend [136], **DENIES** plaintiff's Motion for Attorney's Fees [137], **GRANTS** plaintiff's request for summary judgment on its open account claim [135], and **DENIES** defendants' Motion for Leave [146].

12

**In accordance with this Order, the clerk should enter judgment in favor of plaintiff in the amount of $946,267.34.**  The judgment includes $642,665.72 in unpaid legal fees, $218,030.52 in prejudgment interest through September 30, 2013, and $85,571.10 in prejudgment interest from October 1, 2013 through June 27, 2014.

**SO ORDERED**, this 27th day of JUNE, 2014.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE